## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**MARTIN GORDON (a.k.a. Robert Hill)**                                    **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 3:06-CV-P534-H**

**JERRY E. ABRAMSON et al.**                                                   **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff, Martin Gordon (a.k.a. Robert Hill), filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). As set forth below, the Court will dismiss certain claims and allow other claims to proceed.

### I. SUMMARY OF CLAIMS

Plaintiff sues in their individual and official capacities Mayor Jerry Abramson, Police Chief John White, Police Officer Brian Kuriger, Police Officer John Kelly, and Police Officer Gipson. He requests $10,000,000.00 in monetary damages. His complaint involves allegations that he was beaten by Louisville police officers during and after one arrest and after another arrest.

According to his complaint, on August 21, 2006, the prosecutor entered dismissal motions "regarding malicious fabricated charges of assault of police filed against plaintiff . . . by defendants Brian Kuriger and John Kelly, which Judge Morris accepted." Plaintiff states that this occurred after he had presented to Judge Morris a letter from the FBI, which stated that investigative reports had been filed with the Department of Justice.[1] He further explains that the

---

[1] Plaintiff attaches to his complaint a letter dated April 25, 2006, from the FBI, stating that investigative reports have been filed "regarding this matter."

"matter" referred to in the FBI letter involved an investigation of "defendants Kuriger, Transler, Gipson, Slaughter and Serge[a]nt John Doe (believed to be Serge[a]nt J. Harper),"[2] who he states beat him over a three-hour period while he was handcuffed to the wall in the police station in the Portland section of Louisville. Plaintiff explains the events leading up to being handcuffed in the police station as follows: while walking down the street, Plaintiff was stopped by Defendant Kuriger. Plaintiff states that Defendant Kuriger informed him that he had received a radio call that Plaintiff had been involved in an argument with some people. Defendant Kuriger asked him for identification, at which time Plaintiff reached into his jacket pocket and gave him a court order signed by Judge Michael O. McDonald identifying Plaintiff as Michael Gordon. Plaintiff told Defendant Kuriger that he had not been in an argument with anyone.

Plaintiff further alleges that Defendant Kuriger saw his white county jail identification bracelet sticking out of his pocket and proceeded to put his hand in Plaintiff's pocket without permission. Defendant Kuriger then asked him why that identification bracelet had Plaintiff's picture but the name "Robert Hill." Plaintiff states that he explained to Defendant Kuriger that Judge McDonald's court order addressed the name issue and then asked him why he had reached into his pocket and pulled out the bracelet.

Kuriger responded that, after "9-11," he could do whatever he wanted. Defendant Kuriger then asked Plaintiff whether he had any weapons or sharp instruments on him, to which

---

[2] The Court notes that although Plaintiff refers to Transler, Slaughter and Sergeant John Doe/Harper as defendants in the body of the complaint, he does not list them in the portion of the complaint form that identifies the defendants. As such, they are not defendants in this action. If Plaintiff wants to amend his complaint to add them as defendants, he should include in his amendment the capacity in which he is suing them, *i.e.*, their individual capacity, their official capacity, or both.

2

Plaintiff replied that he did not. Plaintiff states that, during the ensuing pat down, Defendant Kuriger attempted to put his hand into Plaintiff's pant's pocket; that Plaintiff grabbed his hand to prevent him from putting his hand in his pocket; and that Defendant Kuriger then grabbed him by the head in a neck-hold. According to Plaintiff, when he asked Defendant Kuriger why he had done that, Defendant Kuriger grabbed his neck in a choke hold, trying to break his neck, then threw his phone into the street, and yelled for someone to call 911 because Plaintiff was going for his gun. Plaintiff denies going for the gun or striking or attempting to hit Defendant Kuriger. According to Plaintiff, two white men who Defendant Kuriger knew helped get Plaintiff into handcuffs. Then, additional police officers arrived, and Transler kicked Plaintiff in the face and head, grabbed him by the arm and dragged him back to his police car, where Transler slammed the door on Plaintiff's legs. According to Plaintiff, Transler told him that he was "going to get the worst ass-whupping[;] I'm going to beat the hell out of your motherf***ing ass!"

At the police station, Plaintiff alleges that Transler dragged him over the hard gravel parking lot, injuring his back to such an extent that FBI agents investigating the assault were able to photograph the injuries two weeks later. Plaintiff further alleges that Transler handcuffed Plaintiff to the wall in the interview room so tightly that the FBI agents were able to photograph those injuries weeks later. According to Plaintiff, Transler came into the room and punched Plaintiff in the face until the sergeant came in and told Transler to hit Plaintiff's body so as not to leave marks. Plaintiff alleges that Transler then punched him in the chest and beat his arms, chest, thighs, and legs with his flashlight. Then, Defendant Gipson came in and punched him in the head and beat his arms, the side of his chest, thigh, and leg on the left side of his body with

his baton. Next, Slaughter came in and beat him with a flashlight, and then a sergeant came in and beat him with gloved hands. Finally, Defendant Kuriger "beat [him] in his head, chest, thighs, and face, as [Plaintiff] begged him to stop."

Plaintiff alleges that he was then left alone in the room handcuffed to the wall when all of the police officers came back in with an EMS worker who offered to look at his injuries. Plaintiff told him he did not want anything done until photographs were taken. Transler grabbed his face, wiped the blood off of his face, and put the rag in his mouth to get the blood out, and then photographs were taken. Then, Transler put gauze on the cuts on his face and drove him to the University of Louisville hospital. Plaintiff states that the places on his body which were beaten were extremely painful and that X-rays were ordered for his chest and ribs and a CAT scan was ordered for his entire body. Plaintiff's complaint alleges that he suffered severe lacerations and contusions; that four front teeth were loose; that his nose was broken; and that he needed assistance to get up for a week and extra padding and pain medication for months.

Plaintiff's complaint contains allegations that he also was assaulted by Defendant Kelly on a different occasion after being asked for identification, which he did not have. According to Plaintiff, Defendant Kelly told him that he was taking him into the police station, prompting Plaintiff to run to the apartment of an acquaintance and hide there. When the police knocked, the acquaintance answered the door and told the police where Plaintiff was. Plaintiff was placed in handcuffs by Officers Davis and Barber,[3] who then led him to the hallway where Defendant

---

[3] The Court notes that Plaintiff does not list Officers Davis and Barber in the portion of the complaint form that identifies the defendants, and, therefore, they are not defendants in this action. If Plaintiff wants to amend his complaint to add them as defendants, he should include in his amendment the capacity in which he is suing them.

Kelly was waiting. Defendant Kelly punched him twice in the face and three times in the stomach and threatened to throw him in the river if he said anything about it. Plaintiff states that false charges were filed against him after this incident. Plaintiff alleges violations of sections 13, 14, 109, and 112 of the Kentucky Constitution, as well as the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), a plaintiff is required to plead more than bare legal

conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Therefore, the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (internal quotation marks and citations omitted).

**A.  Mayor Abramson and Police Chief White**

Plaintiff's complaint does not mention these Defendants specifically except in the caption and portion of the complaint wherein the parties are identified. Plaintiff's complaint does allege that "all of the defendants" were responsible for Plaintiff's safety by negligently employing, retaining, supervising, training and controlling Defendants. Plaintiff does not include any specific instances in which either Mayor Abramson or Police Chief White was made aware of the alleged mistreatment of Plaintiff. "[A] § 1983 action liability cannot be based on a theory of respondeat superior." *Taylor v. Mich. Dept. of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995). Instead, there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it by, at a minimum, a showing that the supervisory official implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate employee. *Id.*

Plaintiff has not made the required showing with regard to either Mayor Abramson or Police Chief White. Consequently, Plaintiff's claims against these Defendants will be dismissed.

**B.  Fifth Amendment Claims**

The Fifth Amendment of the United States Constitution, which is part of the Bill of Rights, provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand

> Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const., Amend. V.

Plaintiff fails to explain how the Fifth Amendment applies to his claims. Based on the facts as alleged by Plaintiff, the Court does not believe that Plaintiff has a cognizable Fifth Amendment claim against Defendants in this instance. Specifically, the Court notes that, to the extent that Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it circumscribes only the actions of the federal government. *See, e.g.*, *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Here, the actions of state, not federal, officials are at issue, and the Court will dismiss the Fifth Amendment claims.

**C.      Eighth Amendment Claims**

Plaintiff's claims involve allegations of unconstitutional conduct during arrest and immediately thereafter. "Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). "Because the Cruel and Unusual Punishments Clause 'is concerned' with punishment by the state 'after it has secured a formal adjudication of guilt in accordance with due process of law,' it does not apply to pretrial detainees." *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (footnote and citations omitted). "However, state pretrial detainees are shielded from cruel and

7

unusual punishments by the Fourteenth Amendment's Due Process Clause, which provides similar if not greater protections than the Cruel and Unusual Punishments Clause." *Id.* (footnote and citations omitted). Because Plaintiff was not a "sentenced inmate" during the times pertinent to this lawsuit, the Court will dismiss the Eighth Amendment claims.

### D. Claims Based on the Kentucky Constitution

Plaintiff claims that Defendants violated his rights under Sections 13, 14, 109, and 112 of the Kentucky Constitution. However, none of these sections appear to be relevant.

Section 13 is entitled "Double jeopardy - Property not to be taken for public use without compensation" and states, "No person shall, for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him." Ky. Const. § 13. The Double Jeopardy Clause of this section relates to criminal prosecutions. The Takings Clause relates to the taking of property for public use. Neither clause is applicable to the facts alleged by Plaintiff in this case.

Section 14 of the Kentucky Constitution states as follows: "All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Ky. Const. § 14. Plaintiff has not alleged that Defendants have denied him the right to file suit or access the Court. Indeed, the fact that Plaintiff was able to file this lawsuit belies any such argument.

Section 109 of the Kentucky Constitution provides:

> The judicial power of the Commonwealth shall be vested
> exclusively in one Court of Justice which shall be divided into a

> Supreme Court, a Court of Appeals, a trial court of general jurisdiction known as the Circuit Court and a trial court of limited jurisdiction known as the District Court. The court shall constitute a unified judicial system for operation and administration. The impeachment powers of the General Assembly shall remain inviolate.

Ky. Const. § 109. As this section deals with the organization of the Kentucky state courts, it is plainly irrelevant to Plaintiff's allegations against Defendants.

Finally, Section 112 of the Kentucky Constitution deals with the location, composition, administration, and jurisdiction of the Kentucky state circuit courts. Obviously this section is also irrelevant to the facts alleged by Plaintiff in this action.

Accordingly, the Court will dismiss all of Plaintiff's claims premised on violations of his rights under the Kentucky Constitution.

### E. Official Capacity Claims

Plaintiff sues the listed Defendants in their individual and official capacities. If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against an employee of Louisville in his official capacities is actually brought against the Louisville Metro government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, Plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In the instant case, Plaintiff has failed to allege the existence of a governmental policy or custom relative to the nature of his complaints and claims. Consequently, the Court will dismiss

Plaintiff's claims against Defendants in their official capacities in a separate order.

### III. CONCLUSION

The Court will enter a separate order dismissing all claims against Mayor Abramson and Police Chief White; Plaintiff's Fifth and Eighth Amendment claims; Plaintiff's Kentucky Constitution claims; and all of the official-capacity claims against Defendants Kuriger, Kelly, and Gipson. The Court also will enter a separate scheduling order governing the remaining claims, *i.e.*, Plaintiff's individual-capacity claims against Defendants Kuriger, Kelly, and Gipson under the Fourteenth Amendment, which the Court will allow to go forward. In permitting those claims to go forward, the Court passes no judgment on the merits or ultimate outcome of this case.

Date:

cc: Plaintiff, *pro se*
     Defendants
     Jefferson County Attorney

4412.009